**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JESUS MAURICIO ORTUNO REINA,
Petitioner,
v.
DHS/OPLA, et al.,
Respondents.

CASE NO. 5:26-cv-02569-KK-SK

**ORDER TO SHOW CAUSE**

Petitioner is a native and citizen of Venezuela detained at the Adelanto ICE Processing Center since June 13, 2025, when he was arrested at the Santa Ana immigration courthouse right after a scheduled hearing petitioner attended. On May 12, 2026, he filed a pro se petition under 28 U.S.C. § 2241, alleging that his detention had become unreasonably prolonged with no significant likelihood of removal in violation of due process. Respondents answered on May 20, 2026, asserting that this court lacks jurisdiction to entertain the petition, that petitioner is properly detained under 8 U.S.C. § 1226(a), and that he has received due process in any event through a so-called *Rodriguez* hearing held on December 23, 2025. The only evidence attached to that answer is the Form I-213 Record and the immigration judge's December 23 form detention order with the "Flight Risk" box checked. (ECF 7-1, 7-2). In June 2026, petitioner requested appointment of counsel and filed a pro se request for immediate release asking, in part, to be released on the conditions that governed before his arrest at Santa Ana immigration courthouse. After the district judge granted petitioner's request for appointment of counsel in July—and pro bono counsel appeared—petitioner filed a counseled reply to respondents' answer on July 20, 2026. Like respondents, petitioner's counsel addressed petitioner's custody status as if he were detained under § 1226(a).

The picture that emerges from examination of the limited record evidence, however, appears different than what the parties have assumed—or briefed.[1] On July 17, 2024, petitioner applied for admission at the Calexico West Port of Entry through a scheduled CBP One appointment; he was served a Notice to Appear, placed in removal proceedings under 8 U.S.C. § 1229a, and released into the United States, where he remained out of custody for approximately eleven months. (ECF 7-1 at 4–5; ECF 9 at 1). Petitioner describes his release, in the disjunctive, as release on "parole o[r] OREC." (ECF 9 at 1). On June 13, 2025, the day of his arrest, an immigration judge dismissed petitioner's removal proceedings without prejudice, as ICE officers were staged in the courthouse for a "targeted enforcement operation." As he left his hearing, ICE agents arrested petitioner on an I-200 administrative warrant and told him that he would be reprocessed for expedited removal to Venezuela under § 235(b)(1) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1225(b)(1). Petitioner evidently expressed a fear of return to Venezuela, because the I-213 Record says "Expedited Removal with Credible Fear." That record also states that petitioner "will be served with a I-860, I-867A, I-867B, I-200, and M-444." (ECF 7-1 at 4–6).

Missing from the record, though, are: any document identifying the mechanism, terms, or duration of petitioner's July 2024 release at the border; any notice or other documentation terminating, revoking, or superseding that release before June 13, 2025; the motion or order effecting the June 13, 2025 dismissal of his removal proceedings; any Form I-860 or I-867 including any credible-fear referral or any credible-fear determination; and any Notice to Appear issued to petitioner after June 13, 2025. These gaps matter because the legal consequences of petitioner's July 2024 release—and thus the authority to detain petitioner eleven months later in June 2025—depend on its character. If that release was so-called

[1] The I-213 record and its I-831 continuation bear marks of at best careless, at worst unreliable, preparation. The narrative recites that petitioner "admitted to being a citizen and national of China," although every other entry in the document identifies him as a citizen of Venezuela. (ECF 7-1 at 4–5). It describes the severance of petitioner's case in removal proceedings from that of "a family unit consisting of his wife and child" while recording, in its biographical fields, that petitioner is unmarried and has no children. (ECF 7-1 at 4–5).

"humanitarian parole" under INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A), then by regulation it could be terminated before its expiration only upon written notice. *See* 8 C.F.R. § 212.5(e). The re-arrest power of 8 U.S.C. § 1226(b) would not reach petitioner, because that power extends by its terms only to "a bond or parole authorized under" § 1226(a). *Jennings v. Rodriguez*, 583 U.S. 281, 308–09 (2018). And the regulations, moreover, withhold from immigration judges the authority to redetermine the custody of those paroled after arrival under INA § 212(d)(5)(A) because they are still classified as "arriving aliens." *See* 8 C.F.R. § 1003.19(h)(2)(i)(B).

In other words, the premise of both sides' arguments is that the authority to detain petitioner somehow migrated to § 1226(a), which presupposes that petitioner was released into the country on conditional parole—thereby permitting his re-arrest "at any time" under § 1226(b). But if petitioner was on humanitarian parole instead, that form of release is legally distinct and—most pertinent here—cannot be revoked before expiration except as provided in 8 C.F.R. § 212.5(e). The question, then, is whether the combined operation on June 13, 2025—evidently pre-planned dismissal of his removal proceedings followed by immediate "reprocessing" of expedited removal—lawfully terminated petitioner's humanitarian parole.

* * *

Under 28 U.S.C. § 2243, respondents must certify the true cause of petitioner's detention, so that the court can "dispose" of the petition "as law and justice require." Therefore, respondents are ORDERED TO SHOW CAUSE at the scheduled hearing on August 19, 2026 (1:30 pm in Courtroom 54) why—if petitioner's July 17, 2024 release was on parole under INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A), but was not terminated in conformity with 8 C.F.R. § 212.5(e) before June 13, 2025—he should not be restored to his parole status and released immediately on the conditions of that parole as of June 13, 2025.

If respondents intend to rely on any documents at the hearing, they must be produced to petitioner's counsel and filed with the court by no later than August 12, 2026, and in accordance with 28 U.S.C. § 2246. Such documents may include: (a)

the instrument by which petitioner was released in July 2024—including any Form I-94, parole authorization, order of release on recognizance, or bond documentation—together with its stated terms, conditions, and duration; (b) any notice, memorandum, or other documentation terminating, revoking, or superseding that release before June 13, 2025, or, if none exists, a declaration under penalty of perjury by a person with knowledge stating that fact; (c) the motion and order effecting the June 13, 2025 dismissal of petitioner's removal proceedings; (d) all expedited-removal processing documents concerning petitioner, including any Form I-860, Forms I-867A and I-867B, Form M-444, credible-fear referral, and any credible-fear determination; and (e) any Notice to Appear issued to petitioner after June 13, 2025.

Alternatively, respondents may discharge this show-cause by filing no later than August 12, 2026, a stipulation with petitioner and proposed judgment granting the § 2241 petition with release ordered on the same or similar conditions of his parole as of June 13, 2025, without prejudice to their rights to terminate that parole in strict compliance with 8 C.F.R. § 212.5(e), and any other applicable law.

IT IS SO ORDERED.

DATED: August 3, 2026

STEVE KIM
United States Magistrate Judge